### STUYVESANT *vs.* PEARSALL and others.

Where a complaint alleged that the mayor, aldermen and commonalty of the city of New-York, had granted to the defendants permission to construct a railroad, commencing on the second avenue, and thence running through other avenues and streets of said city, which grant was of great value; that it was obtained by the defendants without their paying any thing therefor, to the city; and that if the same had been offered for sale, or if the railroad had been made by the corporation, and maintained and used for the

Stuyvesant *v.* Pearsall.

benefit of the city, it would have produced large profits and returns to the corporation; which allegations were not denied; and it was admitted that the plaintiff was a property-holder and tax-payer in the city, to a large amount; *Held*, that the corporation, in making the grant, had been guilty of such a *breach of trust*, as called for the interposition of the court, and that an injunction should be issued, to prevent the construction of the railway. MORRIS, J. dissented.

The exclusive privilege of laying a railway track, and running cars, and receiving pecuniary emolument therefrom, like the franchise of a bridge or ferry, or other incorporeal hereditament, is as much a subject of property as the park or the city hall, or the moneyed contents of the city treasury. *Per* ROOSEVELT, J.

To grant such a privilege to a few favored individuals, without any public equivalent, is a gross breach of trust, and subject, as such, to the jurisdiction of the supreme court, sitting as a court of equity.

And the court, on the complaint of a tax-payer, may restrain the making of such a grant, by injunction, or if the grant is already made, may declare it null and void. MORRIS, J. dissented.

THIS was a motion for an injunction, to restrain the digging up and breaking of the first and second avenues, and Twenty-third, Allen, Grand, Chatham, Oliver, South, Roosevelt, Front and Christie-streets, and Peck slip and the Bowery, in the city of New-York, and the laying of a railroad track therein, under an agreement with the common council. The substance of the complaint is set forth in the opinion of EDWARDS, J. The facts were similar to those appearing in *Milhau and others* v. *Sharp and others*, (*ante, p.* 193,) where a similar application was made and granted, in respect to the *Broadway* railroad.

*Wm. Curtis Noyes*, for the plaintiffs.

————————, for the defendants.

EDWARDS, P. J. The complaint in this case states that the mayor, aldermen and commonalty of the city of New-York have granted to the defendants the permission to construct a railroad, commencing on the second avenue and thence running through other avenues and streets of said city. It further alleges that this grant was and is of great value; that it was obtained by the defendants without their paying any thing therefor to the

city; and that if the same had been offered for sale, or if the railroad had been made by the corporation, and maintained and used for the benefit of the city, it would by the sale of the right to construct it, or by the income of the road, have produced large profits and returns to the corporation, to be expended and applied in the support and maintenance of the city government, and to the extent of many thousands of dollars. These allegations are not denied, and for the purposes of the present motion they must be assumed to be true. It is also an admitted fact that the plaintiffs are property-holders and tax-payers in the city to a large amount.

Upon this state of facts, I am of opinion, for the reasons which have been stated in the case of *Milhau* v. *Sharp et al.*, that the corporation in making the grant in question, has been guilty of such a breach of trust as calls for the interposition of this court, and that an injunction should be issued against the defendants in pursuance of the prayer of the complaint.

ROOSEVELT, J. The allegation of the great pecuniary value of the grant of the railroad in question, not being denied, is, in effect, admitted to be true. No corporation, whether moneyed or municipal, having stockholders or constituents, has a right, without their consent, to give away the property intrusted to its care. The exclusive privilege of laying a rail track and running cars, and receiving pecuniary emolument therefrom, like the franchise of a bridge or ferry, or other incorporeal hereditament, is as much a subject of property as the park or the city hall, or the moneyed contents of the city treasury. To grant such a privilege to a few favored individuals, without any public equivalent, is in principle the same as a resolution or ordinance of the common council directing a division of the funds of the city, raised by taxation, among the members themselves. Such acts, whether done or threatened, are all alike gross breaches of trust, and subject as such, to the jurisdiction of the supreme court, sitting as a court of equity. It is the duty of the court, in such a case, as in the case of any other trust, on the complaint of injured parties, who, in the present

instance, are the oppressed tax-payers, to restrain the commission of such acts, by injunction, and where the grants are already made, to declare them null and void.

If it be true, (and such is admitted to be the fact,) that the franchise in question was of the value of, and might have been disposed of for "many thousands dollars," it follows as an inevitable consequence, that by giving it away the common council were in effect, taxing their constituents unlawfully, to the extent of as many thousands.

MORRIS, J. dissented.

Injunction granted.

[NEW-YORK GENERAL TERM, April 4, 1853. *Edwards, Roosevelt* and *Morris*, Justices.]