Wood *v.* Draper.

Judgment accordingly.

[DUTCHESS GENERAL TERM, April 14, 1857. *S. B. Strong, Emott* and *Birdseye,* Justices.]

FERNANDO WOOD *vs.* SIMEON DRAPER and others.

The supreme court will grant its aid to restrain, by injunction, the imposition of any tax or burthen on the tax payers of a city contrary to law, on a complaint filed by any tax payer, on his own behalf as well as on behalf of others similarly interested; or on behalf of any corporator of the city, having an interest in the corporate property thereof, on a similar complaint, showing an illegal diversion or application of the corporate property.

But the plaintiff in such a case must aver that he files his complaint not only on his own behalf, but on behalf of all others similarly situated. Such an averment is essential to a complete determination of all the rights affected by the suit.

MOTION for an injunction. The facts are stated in the opinion of the court.

*J. W. Edmonds, T. Sedgwick* and *C. O'Conor,* for the plaintiff.

*W. M. Evarts, W. C. Noyes, D. D. Field* and *F. B. Cutting,* for the defendants.

DAVIES, J. This motion has been argued with an ability commensurate with its importance, and with the high standing at the bar of the distinguished counsel employed in the cause.

The plaintiff files his complaint in this cause, alleging there-

Wood v. Draper.

in that he is a tax payer in the city of New York, and one of the
corporators thereof; and prays that the defendants may be re-
strained from the execution of a statute which he alleges to be
unconstitutional and void.   The relief demanded in the com-
plaint, which it is competent for this court to grant in a proper
case, is a perpetual injunction, restraining the defendants from
the execution of the act.   The authority for this court to inter-
fere by way of preliminary injunction, is conferred by § 219 of the
code.   It authorizes the court, when it shall appear to it by the
complaint that the plaintiff is entitled to the relief demanded, and
that such relief, or any part thereof, consists in restraining the
commission of any act, the commission of which during the liti-
gation, would produce injury to the plaintiff, or where during the
litigation it shall appear that the defendant is doing, or is about
to do some act in violation of the plaintiff's rights, and tending to
render the judgment ineffectual, a temporary injunction may be
granted to restrain such act.   It is not granted, when the plaintiff
is entitled to any relief, but to the relief demanded.   If, by the
law, as it stood before the code, the plaintiff had no right to the
relief sought in a suit in his own name, he has now none, as
the section does not profess to extend the relief which the plaintiff
might claim in such a suit.   If the only final relief which he de-
mands is a judgment for an injunction, (as in this case,) he must
show that, by the law as it stood before, he was entitled to that re-
lief.   (*Chemical Bank* v. *The Mayor, &c.* 12 *How. Pr. R.* 476.)

It is well settled in this court that when the plaintiff appears
to be entitled to a decree for a perpetual injunction, he may
also have a temporary injunction, *pendente lite*, provided it is
necessary to protect him from injury.   (*Corning* v. *Troy Iron
and Nail Factory*, 6 *Pr. Rep.* 89.) The first question,
therefore, to be disposed of is, has the plaintiff such a standing
in this court as entitles him to the relief claimed in the com-
plaint?

The plaintiff alleges, and it is not denied, that he is a tax pay-
er in the city of New York, and a corporator thereof.   The
meaning and extent of this averment are, that he contributes to
the taxes raised in this city, and is a member of the corporation

thereof, and as such is interested in the corporate property. By being a tax payer he has contributed to the taxes already raised and collected therein, and is liable to be assessed and to pay his aliquot part, by way of taxation, to liquidate and discharge any additional burthens which may be imposed upon the tax payers of said city. As a corporator, he is a part owner of all property, real and personal, owned by the corporation, and has a right to be heard in any disposition to be made of it.

The complaint sets forth the act of the legislature of this state, passed April 8, 1857, entitled " an act to establish a metropolitan police district, and to provide for the government thereof." This act organizes the counties of New York, Kings, Westchester and Richmond, into a district to be called " The Metropolitan Police District of the state of New York," and directs the appointment of five commissioners by the governor and senate, who, with the mayors of the cities of New York and Brooklyn, *ex officio*, are to form a board of police commissioners. Such board is authorized to appoint various officers, to aid them in preserving order and performing the duties imposed upon them by the said act, viz. a general superintendent of police, and two deputy superintendents; five surgeons of police, and so many inspectors or captains of police, not to exceed forty; so many sergeants of police, not to exceed one hundred and fifty, and so many police patrolmen, as may be determined on by the supervisors of the county of New York, as the patrol force of said county; and so many patrolmen for the city of Brooklyn and for the county of Kings, not included in said city, and for the counties of Westchester and Richmond as the common council of said city and boards of supervisors of said counties shall determine. Until otherwise provided, the existing police force in the cities of New York and Brooklyn will continue to be the police force of the counties of New York and Kings. By § 14 of said act, it is provided that the common councils of New York and Brooklyn, at the expense of said cities respectively, shall provide all necessary accommodations in said cities, for the station houses required by the board of police, for the accommodation of such police, for the lodging of vagrants, and the

Wood *v.* Draper.

temporary detention of persons arrested for offenses.  It is also made the duty of said common councils to furnish the same suitably, and to warm and light the same by day and by night. In case the said common councils, or either of them, shall refuse to make such provisions, having been requested .so to do by said board of police, then it is made lawful for said board to make their own provisions in the premises, and the expense thereof shall become a proper charge and debt upon the city so neglecting or refusing.

By § 26 of said act, it is provided that the board of supervisors of the county of New York shall annually raise, by tax upon the real and personal property taxable in said county, such sums of money as the board of police, on or before the first Monday of June in each year shall apportion as requisite and needful to be raised by said city, which sums of money shall be applied by said board of police for the fiscal purposes of said act. Such apportionment not to be binding, if it shall exceed the sum necessary to maintain the police force in said counties respectively, nor unless the same shall be approved by a majority vote of an auditing committee, composed of the presidents of the boards of supervisors in each county in said district, and by the comptrollers of the cities of New York and Brooklyn. Such moneys, so to be raised, are to be paid into the treasury of said respective cities, and thereafter immediately paid into the treasury of the state, and to be drawn therefrom by the said board of police, for the purposes of said police. And by the said section it is further provided, that all the moneys collected by the said cities for police purposes, during the years 1856 and 1857, and not expended, shall, immediately on the organization of the said board of police, and on notice served on the comptrollers of said cities, be paid into the state treasury, to be disbursed by the said board of police. By § 15 of said act it is declared, that all telegraphic apparatus, public police property, books, records and accoutrements, in the possession of the police department of the city of New York, are thereby given for the use (and not to be removed from the county wherein now used,) of the board of police created by said act, but

the ownership of the same, and the use thereof, shall be according to the ordinances which the common council of the city, in which such property is situated, may enact.

It is thus seen that the said board of police have the authority to create a tax upon the citizens of New York, for the purposes of said act; the right created in case the common council of said city does not surrender to them the station houses, &c., now used by the police of said city, and refusing to keep the same warm, &c., to provide others at the expense of said city; to take out of the city treasury for the purposes of said board, any unexpended moneys raised therein for police purposes, for the years 1856 and 1857, at the date of the organization of said board, and apply and use the same for the purposes of said board; and to take possession of all telegraphic apparatus, public police property, books, &c., now used by the corporation of the city of New York, and the property of said corporation, and the use thereof is by this act given to said board.

Has the plaintiff, as a tax payer, any interest in these taxes to be levied, or in those already collected and now in the city treasury; or as a corporator, in said property to be taken and thus used? If I correctly apprehend the decisions of this court in several cases, he has an interest, and such a one as this court is bound to protect, if it shall see that the same is about to be illegally invaded.

The first case, in which the aid of this court was invoked by a tax payer to prevent a misapplication of moneys raised by taxation, or in the possession of the corporation, was that of *Adriance* v. *The Mayor*, reported 1 *Barb.* 19. In that case the plaintiff filed his bill, setting forth that he was the owner of real estate in this city, and a tax payer. He charged that among other misappropriations by the common council, they had directed the payment of moneys not authorized by law, and the complaint prayed a perpetual injunction, restraining the corporation from paying those sums. The bill was taken as confessed by the defendants. The court, though entertaining doubts of its jurisdiction, granted the injunction as prayed for. The next

case was in 1849, of Kirby and others, tax payers, against the corporation and certain committees of the common council, for an injunction, restraining them from purchasing a certain island in the East river called Berian's island, for a cemetery. The injunction in that case was granted and sustained. The next case which called for the judgment of this court, and settled this principle, was that of *Christopher and Tilton* v. *The Mayor of New York and others,* (13 *Barb.* 567.) In that case an injunction had been granted, on the application of the plaintiffs, who claimed the intervention of the court, on the ground that they were tax payers and freeholders in the city of New York. On their complaint an injunction was issued, restraining the corporation, and the comptroller, and the commissioners of repairs and supplies, from making and executing any contract with one John B. Corlies, in pursuance of a resolution of the board of aldermen, for rebuilding Washington market, and restraining the said Corlies, in case any such contract had been executed, from acting under the same. The case was very earnestly argued at the general term of this court, and it being the first instance, on a full discussion, in which its aid had been invoked by a tax payer, excited much attention, and received the careful examination of the court. The opinion of the court was delivered by Edwards, justice, who says: "It seems to me that when an act is clearly illegal, and when the necessary effect of such act will be to injure, or impose a burthen upon the property of any corporation, there is enough, according to every principle which has regulated the action of courts of equity, to warrant the interference of the court. * * * But, it is said that the plaintiffs have not such an interest as corporators, as will entitle them to the relief which they ask. It appears by the complaint, that they are tax payers and freeholders in the city. The necessary effect of the act complained of, will be to impose a burthen upon their real estate. Their interest, then, is as certain and direct, as that of a stockholder in a moneyed or other corporation." The order granting the injunction was affirmed. This case is so clearly analogous to the one now under consideration, as to the right of this plaintiff to invoke the aid of this

court, that I am unable to discover any essential difference. It is the law of this court, and by it I am bound, sitting at special term. Two cases were referred to by the court in its opinion, as sustaining the results at which it arrives. The first was that of *Bromley* v. *Smith,* (1 *Simons,* 8.) By act of parliament in the 40th Geo. 3, for enclosing and allotting certain waste lands, in the parish of St. Mary, in Stafford, over which the house-holders, being parishioners, within that borough, were entitled to rights of common, the occupiers of houses of the yearly value of £5 within the borough, or any seven or more of them, were empowered to meet at the times and places therein mentioned, for the purpose of making rules and regulations for the cultiva-tion and management of the allotments, to appoint a treasurer and certain other officers, and to raise money by rates on such occupiers, for the purpose of carrying the rules and regulations into effect. The act was put in force soon after it was passed. In 1821, one Bagnall, who had been removed, for misconduct, from an office which he held under the act, obtained a verdict in an action for a libel, brought against the defendant Under-wood, who was the then treasurer under the act, for damages and costs to the amount of £300. In March, 1852, Underwood resigned the treasurership, and the other defendant, Smith, suc-ceeded him. Smith, out of money arising from the rates made pursuant to the act paid £107 15s. 1½d. to Underwood's attorney, in part discharge of the costs of the action. The bill was filed by nine persons who were householders, and parish-ioners within the borough of Stafford, on behalf of themselves and all other householders and parishioners within the borough, excepting Smith and Underwood; and after stating to the effect before mentioned, it alleged that the last mentioned payment was a misapplication of the rates; that the householders, being parishioners within the borough of Stafford, who were interested in the allotments, were very numerous, and that the plaintiffs were unable to make all of them parties to the suit. It prayed for an account of the rates received by the defendants, during their respective treasurerships, and that the balance remaining in their hands might be applied for the purposes of the act, and

that they might be decreed to replace what they had misapplied, and restrained from further misapplying the moneys arising from the rates. Both of the defendants stated in their answer, that the action for a libel arose out of acts done by Underwood, in obedience to orders made by the householders present at certain meetings; and that the costs of the action also had been paid out of the rates, in obedience to orders made in like manner, and had been allowed the treasurer in passing his accounts, and that the majority of the householders were averse to the institution of this suit, and approved of the acts complained of in the bill. These statements were supported by evidence. For the plaintiff it was contended that the householders had no discretionary power as to the application of the rates; that they could apply them to no other purposes than those prescribed by the act; that by the misapplication complained of in the bill, all the householders were injured, as more money must necessarily be collected from them than would have been required for the purposes of the act, and that, therefore, any of them had a right to seek redress for the injury they had sustained. The defendant relied on the proceedings complained of having been sanctioned by the majority of the householders, and insisted that the plaintiffs had no right to institute this suit against the wishes of that majority, and that, if there had been any abuse, the only mode of redressing it was on information filed by the attorney general. The vice chancellor : " Where a matter is necessarily injurious to the common right, the majority of the persons interested can neither excuse the wrong nor deprive all other parties of their remedy by suit. The attorney general may file an information in a case like this, in respect of the public nature of the right ; and the proceeding must be by the attorney general, when all persons interested are parties to the abuse; but when that is not the case, I am not aware of any principle or authority which makes it necessary that he should be before the court."

The other case referred to is that of *Gray* v. *Chaplin*, 2 *Sim. & Stu.* 267 ;) and sustains the same principles. This doctrine was again reviewed in this court in *Milhau* v. *Sharp*, (15

Wood *v.* Draper.

*Barb.* 193,) in which this court again held that the plaintiffs, being tax payers to a large amount, having such an interest in preventing the grant from the corporation, under consideration in that case, from being carried into effect, had a right to institute that suit in their own names, and that an injunction should issue to restrain it. The same subject was again carefully and elaborately reviewed in the case of *De Baun and Thistle* v. *The Mayor &c.*, (16 *Barb.* 392,) and the doctrine reaffirmed that a person owning real estate in the city of New York and paying taxes therein, may prosecute an action against the corporation, on behalf of himself and other tax paying citizens, to enjoin the corporation, or those acting under them, from expending the money raised by taxation, in repairing or paving a street in a manner contrary to an express law, and tending to add to the taxes of the inhabitants. The same point was ruled in *Stuyvesant* v. *Pearsall*, (15 *Barb.* 244.) See also, to the same point, *Roosevelt* v. *Varnum*, (12 *How. Pr. R.* 469.)

It must, therefore, be regarded as the settled law of this court, that it will grant its aid to restrain by injunction the imposition of any tax or burthen on the tax payers of this city contrary to law, on a complaint filed by any tax payer on his own behalf, as well as on behalf of others similarly interested, or on behalf of any corporator of said city having an interest in the corporate property thereof, on a similar complaint, showing an illegal diversion or application of the corporate property.

The next question which presents itself is, does this complaint show sufficient facts to bring the present plaintiff within the principle of these decisions? It will be observed, that in all these cases the plaintiffs claim the intervention of the court, as well on their own behalf as that of all others of like interest. Is this an essential averment? It is omitted from the present complaint, and the relief is only asked for by the plaintiff for himself alone.

The rule in reference to the proper and necessary parties is, that all must be made parties who have an interest in the result; and when a great many individuals are interested, the court

will often permit a few to represent the whole; but the bill should expressly state that it was filed as well on behalf of other members as of those who are really made complainants. (*Edwards on Parties, p.* 40.) One legatee may sue for his legacy, without naming the others interested in the same fund; but the plaintiff must sue as well on his own behalf as of all others similarly situated. (*Brown v. Ricketts,* 3 *John. Ch.* 553, *and cases there cited.*) In *Chancey v. May,* (*Pr. in Ch. Finch. ed.* 592,) a bill was brought by the then treasurer and manager of the Temple Mills Brass Works, in behalf of themselves and all other proprietors and partners in the first undertaking, except the defendants, who were the late treasurer and managers, being about thirteen in number; and it was to call them to an account for several misapplications, mismanagements and embezzlements of the copartnership property, in the South Sea times, to the value of £50,000 and upwards; the copartnership consisted originally of but 18 shares, but those 18 shares, in the year 1720, were split and divided into 800. The defendants demurred for that all the rest of the proprietors were not made parties, and so every one had the same right to call upon them to an account and then they might be harassed and perplexed with a multiplicity of suits; but the demurrer was disallowed, because it *was in behalf of themselves and all others, the proprietors of the same undertaking,* except the defendants, and so all the rest were in effect parties. (*See also Lloyd v. Loaring,* 6 *Ves. jun.* 773; *Cockburn v. Thompson,* 16 *Ves.* 321; *Cooper's Eq. Pl.* 40, 41; *Good v. Blewitt,* 13 *Ves. jun.* 397.) In this case the bill originally did not contain the allegation that the bill was in behalf of the plaintiff and all others, but leave was given to amend by introducing a statement that the bill was on behalf of the plaintiff and all others of similar interest. (*See also Smith v. Swormstedt,* 18 *How.* 288; *Brown v. Robertson, Id.* 480.) In *Leigh v. Thomas,* (2 *Ves. sen.* 312,) a demurrer to a bill, which omitted to state that it was filed on behalf of the plaintiff and the rest having similar interests, was sustained. In *Baldwin v. Law-*

*rence,* (2 *Sim. & Stu.* 18,) the bill was dismissed, because it was not filed by the plaintiffs on behalf of themselves and all others equally interested with them. And in *Douglass* v. *Hasfall,* (*Id.* 184,) the vice chancellor sustained a demurrer and dismissed a bill on the ground that the bill ought to have been filed by some of them, on behalf of themselves and others. The rule is also well laid down in *Ling* v. *Young,* (2 *Sim. & Stu.* 385.) The case of *Macbride* v. *Lindsey,* (9 *Hare,* 574–585,) seems to be quite in point. Bill filed by plaintiff, as a shareholder in a company, against several defendants also shareholders; the plaintiff stating that there were others, and that he was ignorant of them, and that the defendants had refused to disclose their names. To this bill the defendants demurred. In support of the demurrer, it was alleged that that plaintiff's case was only that of every other member of the corporation who had sustained the same injury, and he could not sue alone. The vice chancellor says, " the case, therefore, is one in which the plaintiff, having a common interest in that point of view with the other parties who will be affected by the relief which he has prayed, and which he has prayed for himself exclusively. Now I am of opinion that he cannot obtain such relief, in the absence of the other parties who are interested in this concern. If he has a common interest with all the other partners in the concern, he must sue on behalf of himself and all those other partners." Demurrer allowed.

So also *Whitney* v. *Mayo,* (15 *Ill. Rep.* 251.) The court hold in that case, that " the general rule in equity is, that all persons materially interested in the subject matter of the suit, however numerous, must be made parties, plaintiffs or defendants. The case before us falls within the exception to the general rule, on account of number, and part being unknown. But the bill has not been framed to meet the exception. It should have been filed for and on behalf of all the other communicant members," and the decree dismissing the bill was affirmed.

The only case which I have been able to find, sustaining a doctrine, apparently adverse to this uniform current of decis-

ions, both in this country and in England, and the established practice in the court of chancery there and in our own courts, is that of *Dodge* v. *Woolsey*, (18 *How*. 321.) In that case, a bill was filed by a single stockholder of a bank, to restrain by an injunction, a tax collector of the state of Ohio, from the collection of a tax, on the ground that the law imposing it was unconstitutional and void. The circuit court of the United States granted the injunction, and the supreme court affirmed the order. The precise point now under consideration, does not seem to have arisen in that case, and it may, perhaps, be reconciled with the authorities before referred to. It would seem at first blush to conflict with them, but if it does, I am satisfied that the weight of authority is entirely with the proposition that a plaintiff who seeks the aid of a, court of equity, in a case like the present, must aver that he files his complaint not only on his own behalf but that of all others similarly situated. Such an averment is essential to a complete determination of all the rights affected by the suit. As has been well observed, without it, the defendants might be subjected to a suit by every tax payer of the city of New York, while on a complaint with the necessary averments, a determination of the case would bind the plaintiff and all others having like rights and interests. Such at least has been the uniform averment in all similar complaints in like cases, entertained by this court, and I do not feel warranted, in this case, in departing from well established principles and authority.

In stating the conclusions to which I have arrived, I adopt the language of Lord Eldon, in *Davis* v. *Fish*, reported in the appendix to Warren on Life Insurance, p. 128, " It must not be understood, from what I am about to say, that I give any opinion, whether the plaintiffs might or might not put such a case on the record, as would entitle them to a decree for the relief they seek. The question is, whether on an interlocutory motion, I can do what is asked. If I could not grant the decree as asked I cannot grant the injunction."

I am satisfied, from a careful examination of the complaint,

and the authorities referred to, that I could not make the decree asked for therein, and, consequently, it is my duty to refuse the injunction.

The motion for an injunction is, therefore, denied, and the order for a preliminary injunction vacated.

