# SUPREME COURT.

ENOCH MANN agt. THE BOARD OF EDUCATION OF UNION FREE SCHOOL DISTRICT No. 2, OF THE TOWN OF ONONDAGA, and AMASA L. PRATT, collector of said district, and others.

*Injunction to prevent the collection of a tax.*

As a general rule the supreme court will not restrain, by injunction, the assessment and collection of a tax.

The rule, however, is not universal. It is subject to three exceptions, in which cases the injunction will be granted:

*First.* Where the proceedings will necessarily lead to a multiplicity of actions.

*Second.* Where they lead to the commission of irreparable injury to the freehold.

*Third.* Where the claim of the adverse party is valid on its face, or the proceedings sought to be set aside, and extrinsic facts are necessary to be proved in order to establish the invalidity or illegality.

Whenever a case is made by the pleadings, falling within these exceptions, or either of them, equity will interpose.

This is especially the rule, where no legal remedy exists by which the relief sought could be obtained.

But the plaintiff, in such a case, must aver that he files his complaint not only on his own behalf, but on behalf of all others similarly situated. Such an averment is essential to a complete determination of all the rights affected by the suit.

*At Chambers, July,* 1877.

THE facts fully appear in the complaint, which is as follows :

The plaintiff in the above-entitled action, complaining against the defendants therein, alleges the following facts constituting his cause of action :

1. That the plaintiff is a resident and tax-payer of said union free school district, and resides within the corporate

limits of the village of Danforth, in said district, and is over twenty-one years of age, and this complaint is made on his own behalf and on behalf of all the tax-payers of said village.

2. That at the times hereinafter mentioned, and at the present time, the defendant the said board of education was duly constituted, according to law, a body corporate, as the board of education of said union free school district, and was duly organized as such; and that the defendants George F. Hitchcock and James H. Hinman were, and still are, respectively, the president and clerk of said board, and that the defendants Matthias Britton, Alsib Childs, Hugh Scott and Samuel H. Kelley were, and still are, members of said board, and that the defendant Amasa L. Pratt was duly constituted, and still is, the collector of said union free school district.

3. That said union free school district lies south of and contiguous to the city of Syracuse, contains about two square miles of land, and comprises within its limits the incorporated village of Danforth, which lies immediately adjacent to said city on the south, and also the remaining portion of said district south of said village, known and designated as Brighton; that the said village of Danforth contains 315 acres of land, exclusive of the surface of Onondaga creek, on the west, with a population of about 800, and the balance of the territory of said district, called Brighton, contains in the neighborhood of 1,000 acres; that the school-house in said union free school district is, and for fifteen years last past has been, located at Brighton Corners, and about eighty rods south of the south boundary line of said village.

4. That prior to and in the fall and winter of 1876-7, the said school-house had become too small for the wants of said union free school district, and there arose and was a *public necessity* for a larger school-house and a new site therefor, located at some point where the whole district would be better accommodated and their growing wants the better met; that by reason of such public necessity, and in pursuance of an order from the school commissioner of the second school

commissioner district of Onondaga county, in which school commissioner district the said union free school district is situate, the defendants the said board of education issued a call for a special school meeting, for the purpose of selecting a new site for a school-house in said union free school district; that said special meeting was held on the 5th day of February, 1877, and such action was taken thereat as resulted in choosing for a new site an acre of land lying just outside the limits of the said village of Danforth, on the south-west corner of Salina and Colvin streets, the center of Colvin street, which runs westward at right angles to Salina street, being the south boundary line of said village, and the north boundary line of the Brighton portion of said union free school district; that, pursuant to a resolution passed at said special meeting, the defendant the said board of education not being able to agree with the owner of said one acre of land upon the price or value thereof, instituted proceedings under chapter 800 of the Laws of 1866, to procure an appraisement of the same, and to acquire title thereto against the consent of the said owner, one Charles C. Jacobs.

That such proceedings were taken under said statute as resulted in an appraisal of said acre at $2,800; and an assessment was made by said defendants the said board of education upon the taxable property in said union free school district, to raise the said sum of $2,800, by tax, to pay for said lot, and a tax-warrant was issued by the said defendants the said board of education, and by them delivered to the defendant Amasa L. Pratt, collector of said union free school district, with directions to collect the same, and who has been, and still is, engaged in the collection of said tax for said purpose; that the amount of said tax assessed upon the taxpayers of the said village of Danforth is about $2,000; that a part of said tax was assessed to this plaintiff, and is still unpaid by him.

5. And the plaintiff further alleges that the number of taxpayers in the said village of Danforth, as appears from the

last assessment roll of said district, is 201, and the number in the Brighton portion of said district is 107, making a total of 308 in the entire district; and while the said proceedings to acquire title to the said one acre of land were pending, and on the 26th day of May, 1877, a petition, signed by 186 of the 201 tax-payers of the said village of Danforth, and by twenty-one of the 107 tax-payers of the Brighton portion of said union free school district, was presented to James W. Hooper, school commissioner of the second school commissioner district of Onondaga county — an officer who is thereunto authorized and empowered by law, and is decided by the state superintendent of public instruction — asking that said union free school district No. 2, of the town of Onondaga, be divided so as to make the incorporated village of Danforth a separate school district; that said school commissioner thereupon refused to act on said petition; that thereafter, and on the 29th day of May, 1877, Truman K. Fuller, one of said petitioners, duly appealed from the refusal to act of said school commissioner to the superintendent of public instruction, to whom an appeal lies by law in such case, and whose decision is made by law final and conclusive, and not subject to question or review in any place or court whatever; that subsequently, and upon issue joined upon said appeal, the said appeal was sustained and the prayer of said petition granted by the Hon. Neil Gilmour, superintendent of public instruction, and a decision was made and filed therein according to law, wherein and whereby he directed the said school commissioner, James W. Hooper, to make the proper order and take the necessary steps to divide said union free school district, so as to make the said village of Danforth a separate school district; which said order was duly made and filed by said school commissioner on the 5th day of July, 1877, to take effect, pursuant to law, on the 8th day of October, 1877, at the end of the present school year.

6. And the plaintiff further alleges, that the division of said union free school district, made as aforesaid by the state

superintendent of public instruction, which decision is made by law final and conclusive, and non-reviewable in any place or court whatever, removes entirely the public necessity for a new school-house site in said union free school 'district, or for a new school-house in the Brighton portion of said district, and certainly removes all necessity or propriety of taking the said acre of Mr. Jacobs, located at the corner of South Salina and Colvin streets, on the extreme northern boundary of said Brighton district, as now existing after said division ; that the present school-house at Brighton Corners is amply sufficient for the wants of the Brighton district, as made by said division, and is centrally located for the accommodation of said district; that the said village of Danforth has no school-house within its limits, and will have to select and purchase a site and build a new school building as soon as said order dividing said union free school district goes into effect; that said new site on the Jacobs' lot aforesaid is neither needed nor wanted by either district for the purpose of building a new school-house upon it — which was the purpose for which it was to be taken under the provisions of the statute before mentioned, and it can be taken for no other purpose; that all the grounds and reasons and necessity for taking said lot for public use, which existed prior to said division, were totally done away with when such division was made.

7. And the said plaintiff further alleges that, notwithstanding the said division of the said union free school district, as hereinbefore alleged, and notwithstanding there is no longer any necessity for the taking of said lot for a public use — to wit, for a new school-house site — yet, nevertheless, the said defendants the said board of education, or a majority of them — to wit, Matthias Britton, Aldis Childs, Hugh Scott and Samuel H. Kelley — refuse to abandon their said proceedings to take said lot and collect the said tax therefor, which they have a legal right, and which it is their plain duty to do, under the changed circumstances of the case,

although thereto requested, and although the said owner is ready and offers to release them from taking the same; but, on the contrary, they are demanding of the said defendant Pratt, the said collector, that he enforce the collection of said tax by distress and sale, if necessary, against this plaintiff and other tax-payers in said village, before said order dividing said union free school district shall take effect, thereby doing great injustice to this plaintiff and others aforesaid; and the plaintiff alleges on information and belief, and charges the truth to be, that it is the unlawful and wicked design of said defendants, or the said majority of them before mentioned, to complete the collection of said tax, and pay over the moneys to said Jacobs for said lot, before the eighth day of October next, the day when said division order goes into effect, for the unjust and wicked purpose of robbing this plaintiff and other citizens and tax-payers of the said village of Danforth, most of whom, including plaintiff, have not paid said tax of the sum of about $2,000, and giving it to the said Brighton district in the shape of a useless school-house site, whereby the grossest injustice will be done to this plaintiff and the other tax-payers mentioned.

8. And the plaintiff further alleges, and charges the truth to be, that the said defendants the said board of education, or the said majority of them, are acting in bad faith in enforcing the said tax, when there is no longer any necessity for it, by reason of the changed circumstances of the case, resulting from the said division of said union free school district aforesaid, and are wrongfully and maliciously, and against equity, seeking to impose an unjust burden upon this plaintiff and other tax-payers of said village, without just cause and through malice, by way of punishing them for desiring a school within their own village limits, which they were unable to secure without a division of said union free school district, and for the part they took in procuring such division; that the Brighton district, as constructed by said

division, is abundantly able to maintain its own school, since it has become possessed, by said division, of a school-house and grounds ample for all its wants for many years to come, and its best citizens do not wish to be made, through such injustice, the recipients of a forced charity from their neighbors; that the defendants aforesaid unjustly refuse to call a meeting of the citizens and tax-payers of said union free school district, to consider the question of abandoning the said proceedings and tax, although they know that such is the wish of at least three-fourths of all the tax-payers in the entire district, and also wrongfully and unjustly refuse to abandon said proceedings and tax, at the request of the owner, who consents thereto and requests it, since the necessity for the taking of his private property, by process of law, and against his will, for a public use, no longer exists; that this plaintiff and the said tax-payers of said village of Danforth will get no return or equivalent for the moneys they are thus unjustly being called upon to pay for said lot, by said defendants, and it becomes, by the injustice thus sought to be practiced upon them by said defendants, a forced contribution of $2,000 to the Brighton district, which is unjust, inevitable and wicked, and ought not to be permitted.

Wherefore the plaintiff demands the judgment and decree of this court, that the defendants be perpetually enjoined and restrained from further collection of said tax, levied and assessed by said defendants, for the purchase of said Jacobs' lot for a new school-house site in union free school district number two, in the town of Onondaga; that the said defendants be decreed, by the mandatory order of this court, to pay back that portion of said tax which has been collected to the persons who paid the same, less the fees for collection ; that meanwhile, and during the pendency of this action, a temporary injunction be granted commanding the defendants, and each and every of them, to absolutely desist and refrain from further collection, or attempting to collect, any and all taxes levied or assessessed by the board of education

of union free school district number two, of the town of
Onondaga, for the purchase of a lot for a new school-house
site in said union free school district number two, of the
town of Onondaga, and from collecting, or attempting to col-
lect, the tax mentioned and described in this complaint,
and from enforcing, or attemping to enforce, the same in
any way whatever, and for such other judgment order or
decree in the premises as may be just and equitable, besides
costs.

*Fuller & Vann*, attorneys for plaintiff.

*Pratt, Brown & Garfield*, attorneys for defendants.

NOXON, *J.* — Upon the complaint in this action, and the
affidavit of T. K. Fuller, annexed, a temporary injunction was
granted *ex parte* on the 9th July, 1877, restraining the defend-
ants from collecting any and all taxes levied or assessed by the
board of education of union free school district No. 2, of the
town of Onondaga, for the purchase of a lot for a new school-
house site in said district. On the twelfth July, on the appli-
cation of defendant, and on the complaint in the action and
the affidavit of Matthias Brittain, and upon the proceedings
taken by the said board of education for acquiring title to
said site for a school-house, and the proceedings upon appeal
from said board to the superintendent of public instruction,
this decision, upon the appeal and upon the letter of T. K.
Fuller to Jacobs, of May 9th, 1877, and all other proceedings
had for obtaining title to said site, filed in Onondaga county
clerk's office, an order was granted that the plaintiff show
cause before the undersigned, at his chambers, on July four-
teenth, at nine A. M., why the injunction order granted by him
in this action should not be dissolved. The motion to dis-
solve the injunction order was adjourned until the sixteenth
day of July, at which time the parties appeared by counsel,
and the motion to dissolve said injunction was heard. The

principal question raised on the part of the defendants and argued upon the motion, related to the equity power of the court to grant an injunction preventing the assessment or collection of a tax. The claim was made on the part of the defendant, that the rule was settled that the court will not enjoin the collection of a tax on behalf of a taxpayer, and numerous cases are cited to sustain the rule. Among others, 59 *New York*, 21; 18 *id.*, 155; 23 *id.*, 318; 50 *Barbour*, 190.

From a careful examination of these cases, and also authorities cited by plaintiff's counsel, I am satisfied that, as a general rule, the court will not and do not grant the order to prevent the assessment or collection of a tax. But it is quite clear, from the cases, that the rule is not universal. The rule is quite general that equity will not interfere to restrain the collection of a tax which is claimed to be illegal or void; in such cases the party is almost universally left to his remedy at law. But even in such a case it was held, in *Wood* agt. *Draper* (24 *Barb.*, 187), that a tax contrary to law, or levied without authority of law, might be enjoined, although in that case the relief was denied because the plaintiff had not averred in his complaint that it was filed on behalf of all others similarly situated, and that such averment was necessary to a complete determination of the rights of the parties. In the case of *Hayward* agt. *The City of Buffalo* (14 *N. Y.*, 534), cited by defendant's counsel, the general rule is laid down as claimed. But in this case the court held that the general rule is subjected to three exceptions, in which cases the injunction will be granted: First. Where the proceedings will necessarily lead to a multiplicity of actions. Second. Where they lead to the commission of irreparable injury to the freehold. Third. Where the claim of the adverse party is valid on its face, or the proceedings sought to be set aside, and the extrinsic facts are necessary to be proved in order to establish the invalidity or illegality. And the court say, whenever a case is made by the pleadings falling within these exceptions, or either of them, equity will interpose. The court say, in that case, that

the plaintiff was bound to make out a case falling under some acknowledged head of equity jurisdiction ; and DENIO, J., states (*p.* 545), that no case was made out because the amount of the illegal tax was not stated. In a note to *High on Injunctions* (*p.* 195), it is stated that the three exceptions, in 14 *New York*, 534, do not comprehend all the exceptions. The same rule, as to exceptions, is laid down in 57 *Barbour*, 383, in case of *Hanlon* agt. *Supervisors of Westchester*. The doctrine was laid down in 40 *New York*, 191, that the injunction should be granted for "the inadequacy of a legal remedy to secure the party in the enjoyment of his rights." In *Dorn* agt. *Fox* (61 *N. Y.*, 264), a tax collector was restrained by injunction. In 63 *New York*, 582 (*Campbell* agt. *Leaman*), the rule is laid down (EARL, J., *p.* 582), the writ can rightfully be demanded to prevent irreparable injury, interminable litigation and a multiplicity of suits.

In 14 *Wisconsin*, 618 (*Warden* agt. *Supervisors of Fond du Lac County*), the court state, on page 620 : "The primary and controlling principle in such cases is, that the proceedings to be stayed are inequitable and unjust, and that it will be against conscience to allow them to go on."

In 25 *New York*, 314, judge DENIO says : "A bill to restrain the collection of a tax will not lie, unless the case is brought within some acknowledged head of equity jurisprudence."

The authorities cited are sufficient to lead us to the conviction that although, as a general rule, the collection of a tax will not be restrained, the rule has its exceptions, and the question presented in this case is : Does this case pass within the exception?

The action is brought by plaintiff for himself and in behalf of the other tax-payers of the village of Danforth to be relieved from the payment of a tax imposed upon them to pay for the site of a school-house taken by the district of which Danforth constituted the north portion and Brighton the south portion of the district. That the site selected was just south of Danforth and in Brighton, and when selected

a public necessity existed for the same.   That such proceedings were regularly taken, and the board of education had issued a warrant for the collection of a tax of $2,800, $2,000 of which was assessed on tax-payers of Danforth.   That since then proceedings were taken to obtain the site.   The district had been divided so that Danforth is a separate district and Brighton constitutes district No. 2.   That defendants are proceeding with the tax, and when collected will pay the purchase-price of the lot and obtain title, and by reason thereof the tax-payers of Danforth will lose the old site and schoolhouse in Brighton, and also all claim in the new site.   The plaintiff claims that the proceeding to collect the tax against them and other tax-payers of Danforth, although legal, are inequitable and unjust and against good conscience and should be restrained.

The complaint itself need not be contained in the decision. The plaintiff prays for a perpetual injunction and for a temporary injunction during the pendency of the action.   It is not for me to express any opinion upon the result of the case.   It is sufficient for me to hold that I am of the opinion that this case comes within the exceptional class of cases.   I can see no legal remedy existing by which the plaintiffs can obtain relief.   The defendants are regularly proceeding according to law to enforce the tax.   The only question is whether this case is brought within some acknowledged head of equity jurisdiction.   From the facts stated in the complaint and the authorities referred to, I believe it is, although I find no case in the books, fully sustaining the conclusion I have reached.   If I am wrong in the view I have taken of the case, it is a satisfaction to know that by allowing the injunction to stand, no injury can result to the defendants.   If plaintiff cannot succeed, the taxes are only tied up by injunction to be renewed again and collected at the termination of the suit. The motion is denied.   The case being wholly new, no costs allowed.