# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

BLANTON, COM'R, v. SOUTHERN FERTILIZING COMPANY AND ALS.

March 29th, 1883.

1. JURISDICTION—*Circuit court of Richmond.*—This court has chancery jurisdiction only in cases where it may be necessary or proper to make certain enumerated officers or corporations defendants. The commissioner of agriculture is not one of these.

2. JOINT SUIT.—Such suit *may* be brought by two or more of a class, for benefit of all similarly affected. *Bull* v. *Read*, 13 Gratt. 86. By some decisions in other states such joint suit must be brought by such persons to avoid multiplicity of suits and irreparable damage. *McClung* v. *Livesay*, 7 West Va. 329.

3. JURISDICTION—*Equity courts—Public officers.*—Chancery has jurisdiction to enjoin illegal acts of an officer attempted *colore officii.* A suit against an officer is not necessarily a suit against the state—*e. g.*, a suit to restrain one from doing unlawful acts under color of an executive office—such as any illegal acts of the commissioner of agriculture.

4. LEGISLATURE—*Commissioner of agriculture—Tags.*—Chapter 249, Acts 1876-7, establishing the department of agriculture and empowering the commissioner of agriculture to make all necessary rules and regulations for carrying out the intentions of the act, does not authorize him to levy a tax upon manufacturers and sellers of fertilizers for the purpose of raising money for the use of the department, in the shape of the *charge on tags*, as required by Rule No. 2, or of any charge on such tags.

5. IDEM—*Idem— Tags without charge.*—But the commissioner hath power to enforce the use of a tag to be attached to each package of fertilizer, showing that the same is registered in the department, without any charge therefor.

Appeal from decrees of the chancery court of the city of Richmond, rendered 4th August and 7th December, 1882, in the suit of the Southern Fertilizer Company, Allison & Addison, and A. S. Lee, suing for themselves and all other manufacturers

and sellers of fertilizers, who will share the costs and benefits thereof, against James M. Blanton, commissioner of agriculture of the state of Virginia. By the first decree an injunction was awarded restraining the defendant from exacting or attempting to exact the charge for certain "tags," which the plaintiffs were required by number two of certain rules prescribed by him, as a condition precedent to the sale of their goods in this state to purchase from said commissioner at the rate of five cents each, to be attached to each package containing two hundred pounds or less of the fertilizer to be sold.

The defendant filed a demurrer and answer to the bill. When the cause was matured and heard on its merits, the chancery court overruled the demurrer and perpetuated the injunction.

*Attorney-General F. S. Blair,* for the appellant.

*Guy & Gilliam, John Howard,* and *Charles Marshall,* for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

The appellant, in his petition for appeal, makes three assignments of error—viz.:

1st. " The demurrer to the said bill should have been sustained, as it is clear that the said chancery court of Richmond has no jurisdiction of the case. The state can only be sued by her consent and in such tribunals as she may choose. The department of agriculture is a regular *state* bureau, authorized by the constitution of Virginia and by the act of assembly 1876–7, page 240. By the Code of 1873, chapter forty-four, section seven, page 417, it will be found that the *circuit* court of Richmond is selected as the forum for all suits against the state or her public boards, bureaus, and departments." And,

2d. "The use of the names of the Southern Fertilizing Com-

pany of Virginia, of Allison & Addison, and A. S. Lee, as co-complainants, was a *misjoinder* of parties, and is one of that class of cases where *several* suits should have been brought."

We think the demurrer was properly overruled.

The circuit court of Richmond has no chancery jurisdiction, except in suits in which it may be necessary or proper to make certain enumerated officers, or public corporations, parties defendant. See section four, chapter 155, page 1042, Code of Virginia 1873; *Ragland* v. *Brodnax*, 29 Gratt. 401. The commissioner of agriculture is not one of the enumerated officers or corporations; and, therefore, is not within the exception. The mode of suing adopted in this case, and the general jurisdiction of a court of equity in such a case as this, are well settled by numerous authorities. See *Bull* v. *Read*, 13 Gratt. 86–87; *Goddin* v. *Crump*, 8 Leigh, 120; *Johnson, &c.* v. *Drummond, &c.*, 20 Gratt. 419–428; *Redd, &c.* v. *Supervisors of Henry County*, 31 Gratt. 697–698; High on Injunctions, section 796. That equity has jurisdiction to enjoin illegal acts of an officer attempted to be done, *colore officii*, see High on Injunctions, section 796; and to enjoin action under an invalid requirement, see *Goddin* v. *Crump*, 8 Leigh, 120. *Bull* v. *Read*, 13 Gratt. 78; *Eyre* v. *Jacob, sheriff*, 14 Gratt. 423; *Redd* v. *Supervisors, &c.*, 31 Gratt. 697–8; Cooley on Taxation, 546, note 1.

That a joint suit *may* be brought by two or more parties of a class for the benefit of all, similarly affected (as charged in the bill) see the same Virginia Cases, and particularly *Bull* v. *Read*, 13 Grat. 86, the leading case. And that such a joint suit *must* be brought by persons similarly affected, to avoid a multiplicity of suits and irreparable damage, see *McClung* v. *Livesay*, 7th West Va. 329–333; *Wood* v. *Draper*, 24 Barb. 187; S. C. 4 Abb. Pr. Rep. 322; Kerr on Injunctions, 199–200.

That a suit against an officer of the state is not, necessarily, a suit against the state. See *Osborne* v. *Bank of U. S.*, 9th Wheaton, 816; *Davis* v. *Gray*, 16 Wallace, 220; *Board of Liquidation* v. *McComb*, 92 U. S. 531, and the case stated in the

bill is, in fact, a suit to restrain an individual from the exercise of unlawful acts, under color and cover of an executive office. The demurrer admits the facts charged in the bill, and if the acts attempted to be done by the commissioner of agriculture in the exercise of his office be illegal, the jurisdiction of the chancery court of Richmond to grant and enforce a perpetual injunction, is plain and unquestionable.

This disposes of the *demurrer*.

3d. The third assignment of error by the appellant makes up the issue on the merits of this case, and asserts the validity of rule "No. 2," prescribed by the commissioner of agriculture, which is in these words: "Every package of fertilizer offered for sale, to be used for agricultural purposes in this state, *must have appended a tag* showing that the same is registered in the department. Tags will be prepared by the commissioner of agriculture, who will furnish the same to persons selling, or proposing to sell, fertilizers, *on payment of five cents for each tag*, to be appended to packages of two hundred pounds or less. Packages containing more than two hundred pound will require a special tag, which will be prepared and *charged for* in proportion to the excess over two hundred pounds."

This is the rule (and the only one) charged in the bill to be illegal and oppressive, and it is the only one of all the rules and regulations prescribed and promulgated by the commissioner of agriculture, about which there is any contention; and it is the only one affected by the injunction.

The department of agriculture was established by act of the general assembly of Virginia, approved 29th March, 1877, entitled an "act to establish a department of agriculture, mining and manufacturing for the state." Acts 1876–7, page 240; and this controvery has arisen upon the construction of that act.

The only portions of the act important to consider, in review of the proceedings in the court below complained of by appellant, are sections five and six.

Section 5. "That the commissioner shall be empowered to

make all necessary rules and regulations for the purpose of carrying out the design and intentions of this act."

Section 6. "That for the purpose of practically carrying out the design for which this department of agriculture is instituted in this state, an appropriation is hereby made for the support and maintenance of said department, and for the payment of employés that it will be necessary to employ to properly carry out the intentions of this act, five thousand dollars per annum, and no greater amount shall be expended for the purposes embraced within this act during any one year. Said amount shall be especially appropriated from the treasury for said purpose, and shall be counted as an annual expense of the state; and said amount shall be drawn from the state treasury by the commissioner, under rules to be established for said commissioner by the governor."

Under the power given by the said fifth section of the act, the commissioner of agriculture claims the right and authority to prescribe and enforce the said rule "No. 2." The appellees, who are complainants below, being manufacturers and sellers of fertilizers, complain that this "Rule No. 2," of the series prescribed by the commissioner of agriculture, is illegal, unjust, and oppressive. The appellant, in his answer to the bill, denies that the said "Rule No. 2," or any of them, is illegal or unjust, or oppressive; and asserts that he is clothed with full power and authority by law to adopt and enforce them.

It is shown in the record that the tags which the commissioner requires the sellers of fertilizers to buy from him, at the price of *five cents* each, cost the commissioner less than one-fourth of a cent apiece—that is, less than one-twentieth of the price which he exacts for them—and that not less than 70,000 tons of fertilizers are annually sold in this state—probably, indeed, a a larger amount—a large part of which, too, is manufactured in this state. And that the commissioner would realize from the sale of tags, annually, not less than $35,000, of which more

than nineteen-twentieths would be clear profit.   The appellant, in his answer in the court below, claims that the power to make rules and regulations to carry out the design and intentions of the act necessarily embraces the right to raise funds for the payment of the expenses of the department, as well as to regulate the official details thereof; and, in fact, in his said answer he explicitly and boldly admits that the object and purpose of the requirement of "Rule No. 2" was largely, if not altogether, *to raise money for his department.*   (See whole answer; but particularly on pages 28, 29, 30 of the record.)

An examination of the act will not justify this bold assumption of power, and the extraordinary act of the commissioner to raise money, at his own discretion, for the purposes of his own department.

The sixth section of the act, after appropriating the sum of five thousand dollars annually, "for the support and maintenance of the said department, and for the payment of the employés that it will be necessary to employ to properly carry out the intentions of the act," expressly declares, "*and no greater amount shall be expended for the purposes embraced within this act during any one year.*"

The commissioner proposes, by his own authority, to raise the additional sum of at least $35,000 every year, and to expend it for the purposes embraced within the act.

The rules and regulations which the commissioner is authorized to make, must be in subordination to the statute conferring his power, and must be consistent and harmonious with the spirit and policy of the act which they are designed to enforce and fulfill; but the charge in rule "No. 2" is not only inconsistent with and repugnànt to the act, but is utterly subversive of the express provisions of it.   There is absolutely nothing upon which the charge imposed by rule "No. 2" can rest.   The act of the legislature is plain, express and unambiguous, and, certainly, by no force or torture of construction

does it impose any burden or tax upon the citizens and the large and important industries of the state, at the discretion and dispensation of the commissioner of agriculture.

The commissioner avers, in his answer, that large sums of money are necessary to carry out the purposes and duties imposed upon his department, and he declares that the annual legislative appropriation is utterly insufficient for the multifarious duties and demand of his office. This may be, and indeed, obviously, is very true; yet the remedy is in the *legislative* will and wisdom, and not in the dangerous discretion and dictate of the commissioner of agriculture to levy a tax upon the industries of citizens of the state who have, in all respects, literally and obediently complied with all the requirements of the law. The power claimed by the commissioner of agriculture is of great magnitude and importance, and is without limit or restriction, other than his own will and estimate of the necessity for revenue for his department. We do not question the motives of the commissioner, nor do we impute to him any design other than the patriotic purpose to carry out the scope and intent of the act creating his office and defining its multitudinous, onerous and expensive duties, but we differ from *his* construction of the law, and we draw nothing but the impassable line between legitimate and illegitimate functions of office.

The commissioner of agriculture refers to the Georgia law and regulations for the agricultural department of that state as the prototype of the Virginia act and of his rules and regulations, but the Georgia law expressly provides, that the commissioner of agriculture of that state shall appoint inspectors of fertilizers at such places as he may deem necessary, &c.; and the seventh section enacts, "the fees for inspecting fertilizers and chemicals shall be, uniformly, *fifty cents* per ton, which fees shall be paid by the manufacturer, agent or dealer procuring the inspection." There is not only the conspicuous absence of this provision for the Virginia law, but the legislature was most careful and explicit in declaring that the analysis which it is the duty and,

perhaps, the sole duty of the commissioner to make, shall *"be free of expense."*

The fifth section of the act of assembly to establish a department of agriculture, mining and manufacturing for the state, approved March 29th, 1877, says, "that the commissioner shall be empowered to make all necessary rules and regulations for the purpose of carrying out the design and intentions of this act"; and under this authority he has the full power and discretion to prescribe and enforce the use of the tag, as he has done in "Rule No. 2"; and while the chancery court of Richmond did not err in perpetuating the injunction forbidding and restraining the commissioner of agriculture, James M. Blanton, from exacting, or attempting to exact, *the charge for tags,* as required by "Rule No. 2," or any charge whatever for the tags prescribed; yet, we think that the last clause of the injunction, in the words, "and also from attempting in any way to enforce said rule (No. 2)," is erroneous, in that it restrains the commissioner of agriculture from the exercise of his undoubted discretion, under the law, to prescribe and enforce the *use of the tag,* without charge for the same.

We, therefore, affirm the decree of the chancery court of Richmond rendered in this cause December 7th, 1882, and perpetuate the injunction therein expressed, except as to the said last clause, which is erroneous, and is hereby dissolved.

The decree is as follows:

The court is of opinion, for reasons stated in writing and filed with the record, that there are no errors in the said decrees in perpetuating the injunction forbidding and restraining the commissioner of agriculture, James M. Blanton, from "exacting or attempting to exact the charge for tags as required by Rule No. 2, or any charge whatever for the tags prescribed," but that the clause in the injunction order in the words, "and also from attempting in any way to enforce said Rule No. 2," is erroneous.

It is, therefore, decreed and ordered that said decrees be amended by striking therefrom the words "and also from attempting in any way to enforce said rule," and, as so amended, be affirmed without damages or costs.

Which is ordered to be certified to the said chancery court of the city of Richmond.

AFFIRMED IN PART.